UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KRISTI DUPLECHAIN

VERSUS

ABC PHONES OF NORTH
CAROLINA, INC., ET AL

CIVIL ACTION

NO. 20-287-JWD-SDJ

<u>RULING AND ORDER</u>

This matter comes before the Court on a *Motion to Compel Arbitration* (Doc. 20) filed by

Defendant ABC Phones of North Carolina, Inc. ("Defendant" or "ABC").  Plaintiff Kristi

Duplechain ("Plaintiff") opposes the motion. (Doc. 29.)  Defendant has filed a reply. (Doc. 48.)

Oral argument is not necessary.  The Court has carefully considered the law, facts in the record,

and arguments and submissions of the parties and is prepared to rule.  For the following reasons,

Defendant's motion is granted.

I.      **Background**

This is a putative collective action for unpaid overtime wages brought pursuant to the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Plaintiff challenges the timekeeping,

payroll, and overtime payment policies and practices of ABC Phones of North Carolina, an

authorized retailer of Verizon Wireless products and services. (Doc. 1.)

Plaintiff began working for ABC as a Sales Consultant around April of 2019 and is

currently furloughed. (Doc. 1, ¶ 14.) At the time Plaintiff was hired, ABC's "on-boarding"

process for new employees included an Arbitration Agreement, which is the subject of the

instant Motion. (*See* Patel Decl. ¶¶ 4-5, Doc. 20-2.) The Arbitration Agreement provides, in

relevant part, as follows:

Company and Employee mutually agree to arbitrate before a neutral arbitrator (the "Arbitrator") any and all disputes or claims by and between Employee, on the one hand, and Company, its parent, subsidiary, and affiliated corporations and entities, and each of their present and former officers, directors, agents, and employees (the "Company Parties"), on the other hand, *including but not limited to any and all claims arising from, relating to, or in connection with Employee's recruitment, hiring, and employment, the termination of that employment, and any claims arising post-employment, including claims by or against the Company Parties, whether such disputes or claims arise in tort, in contract, or under a statute, regulation, or ordinance now in existence or that may in the future be enacted or recognized, including but not limited to the following claims:*

[. . .]

*d. Claims for nonpayment or incorrect payment of compensation and benefits, including, but not limited to, claims for salary, wages, overtime, premium pay, commissions, bonuses, severance, meal and rest periods, penalties, employee fringe benefits, stock options, and the like, whether such claims derive from alleged express or implied contract or obligation, equity, the Fair Labor Standards Act, the Employee Retirement Income Securities Act (ERISA), or any other federal, state, or municipal laws concerning wages, compensation, or employee benefits.*

(Arbitration Agreement ¶ 1, Doc. 48-3 (emphasis added).)

The Agreement further states that: "[T]he terms and procedures governing the enforcement of [this Agreement] will be governed by and construed and enforced in accordance with the FAA [the Federal Arbitration Act], and not individual state laws regarding enforcement of arbitration agreements." (*Id.* ¶ 5.) The Arbitration Agreement also includes a "Class Action Waiver," wherein the parties agree to "bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative basis." (*Id.* ¶ 3(e).) Finally, the Arbitration Agreement provides, "by signing below, Employee acknowledges Employee has read this Agreement or had the opportunity to do so…. Employee understands Employee and Company are waiving all rights to a trial or hearing before a court or jury of any and all disputes and claims subject to arbitration under this Agreement." (*Id.* ¶ 10.)

Throughout Plaintiff's employment, ABC used an internal online system (the "Arbitration System") to facilitate the presentation of its Arbitration Agreement to new hires.

2

(Patel Decl. ¶ 10, Doc. 20-2.) To access the Arbitration System, employees log-in using a unique username and password, which they are instructed to keep "confidential and secure." (*Id.* ¶ 7.) After logging in to the System, employees are "presented with a full and complete electronic version of ABC's Arbitration Agreement," for them to read and review. (*Id.* ¶ 8.) After reviewing the Arbitration Agreement in the System, employees can sign the Agreement by electronically clicking a button labeled "sign." (*Id.* ¶ 9.) The last section of the Agreement specifically provides that "[e]ach party agrees that the electronic signatures, whether digital or encrypted, of the Parties included in this Agreement are intended to authenticate this writing and to have the same force and effect as manual signatures." (*Id.* ¶ 11.)  On April 8, 2019, Plaintiff electronically signed the Arbitration Agreement by clicking a button on the computer labeled "sign". (Patel Decl. ¶ 10, Doc. 20-2.)

On May 11, 2020, Plaintiff filed the instant suit against Defendant on behalf of herself and a similarly situated class based on ABC's purported "unlawful payroll scheme" that allegedly entailed "[ABC's] policy of not paying sufficient overtime to its Sales Consultants."[1] (Doc. 1, ¶¶ 2, 10.) Plaintiff alleges that she and the putative collective action members were "non-exempt employees" of ABC who were "paid on an hourly rate with additional commission based on a percentage of their sales." (*Id.* ¶¶ 6, 16.) She alleges that Defendant failed to include their commissions in their regular rate of pay used to calculate their overtime wages. (*Id.* ¶ 7.)

Specifically, Plaintiff alleges that ABC "required its Sales Consultants to work far in excess of 40 hours per work week" and that she "routinely worked 60 hours or more in a work

---

[1] Plaintiff alleges in one sentence that there are "questions of fact and law common to the class," and one such question is "whether [ABC] improperly withheld one hour per workday for each employee without allowing employees an hour break from performing work duties." (*Id.* ¶ 18.) There is no other allegation in the Complaint related to this theory. (*See* Doc. 1.) The parties dispute whether this claim was properly alleged in the Complaint. Regardless of whether this claim was sufficiently stated or not, it still falls within the scope of the Arbitration Agreement.

week." (*Id.* ¶ 8.) She claims that ABC "willfully refused to pay sufficient overtime wages to [P]laintiff and the collective action members whom she seeks to represent for hours worked in excess of 40 hours per week in an attempt to extract a higher profit margin." (*Id.* ¶ 28.) Plaintiff further alleges that the illegal payroll scheme was ABC's policy at the time Plaintiff began her employment and continues presently as the policy of ABC. (*Id.* ¶ 15.) Plaintiff is seeking to recover an award of damages under the FLSA, including liquidated damages, reasonable attorney's fees, costs, and the expenses of this action. (*Id.* at 8.)

Additionally, in her Complaint, Plaintiff acknowledges the existence of a similar class action currently pending before the Western District of Tennessee. *See O'Bryant et al v. ABC Phones of North Carolina, Inc.,* No. 2:19-cv-02378 (W.D. Tenn.). Defendant in this case is also a defendant in the *O'Bryant* class action, which involves similar FLSA claims. Plaintiff expressly opted-out of any settlement negotiated in the *O'Bryant* case in her Complaint. (*Id.*) Further, Plaintiff states that the proposed settlement in *O'Bryant* does not cover the entire work period that would be recoverable under the FLSA in her case. (*Id.*)

Also, on May 11, 2020, Plaintiff moved for conditional certification of her class claims under Section 216(b) of the FLSA. (Doc. 2.) *See* 29 U.S.C. § 216(b). On May 21, 2020 Defendant filed a Motion to Stay this action pending resolution of a settlement agreement in the *O'Bryant* case. ABC expressly reserved its right to compel arbitration in this case in its Motion to Stay. (Doc. 8-1, at 1 n.2, "[This Motion to Stay] is filed without waiver of ABC's potential counterclaims or defenses, including its right[]…[to] move to compel arbitration in accordance with any valid and enforceable arbitration agreement.")

On June 15, 2020, Defendant filed a Motion to Transfer Venue, a Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim, and the instant motion. (Docs. 18, 19, 20.) In

4

its Motion to Transfer and Dismiss, ABC specifically provided that it was alternatively and

simultaneously filing a Motion to Compel so as to not waive its right to compel arbitration. (*See*

Doc. 18-1, at 1 n.2; Doc 19-1, at 1 n.2.)[2]

## II.    Parties' Arguments

### A.  Defendant's Memorandum in Support (Doc. 20-1)

Defendant argues that because the parties entered into a valid and binding Arbitration

Agreement, the Federal Arbitration Act ("FAA") applies, which requires this dispute be

compelled to arbitration. (Doc. 20-1 at 6.) In support of its argument, Defendant cites to the

FAA, which states that a written arbitration agreement "shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract." (Doc. 20-1 at 6 (citing 9 U.S.C. § 2).)

Pursuant to the FAA, Defendant argues that this Court must compel arbitration if it finds

that: (1) a valid arbitration agreement exists; and (2) the parties' dispute falls within the scope of

that agreement. (Doc. 20-1 at 6 (citing *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381

(5th Cir. 2008)).)

Applying this test, Defendant argues, first, that the Arbitration Agreement is valid as

evidenced by Plaintiff's electronic signature on the Agreement. (*Id.* at 7-9.) It further argues that

even if Plaintiff had not electronically signed the Agreement, she manifested her assent to the

Agreement by continuing her employment for more than 30 days after reviewing the

---

[2] Specifically, Defendant's Motion to Transfer provides, "[T]o make clear ABC is not waiving any rights to compel arbitration pursuant to its valid and enforceable arbitration agreement with Plaintiff, ABC is alternatively and simultaneously filing a motion to compel arbitration and motion to dismiss for failure to state a claim. The filing of this Motion and a motion to dismiss do not constitute waiver of ABC's rights to compel arbitration." *See Pacheco v. PCM Const. Servs., L.L.C.*, 602 F. App'x 945, 948 (5th Cir. 2015); *Ryan v. Thunder Restorations, Inc.*, No. CIV.A. 09-3261, 2011 WL 2680482, at *6 (E.D. La. July 8, 2011). (Doc. 18-1, at 1 n.2.) The Motion to Dismiss says, "ABC is also simultaneously filing a Motion to Compel Arbitration to make clear ABC is not waiving any rights to compel arbitration pursuant to its valid and enforceable arbitration agreement with Plaintiff. The filing of this Motion to Dismiss does not constitute waiver of ABC's rights to compel arbitration." (citing the same) (Doc. 19-1, at 1 n.2.)

Agreement.[3] (*Id.* at 9-11.) As such, the parties have formed a valid agreement, satisfying the first prong.

As to the second prong, Defendant argues that this dispute plainly falls within the scope of the Arbitration Agreement. (Doc. 20-1 at 11.) Defendant states that the scope of the Agreement is very broad as it covers, "any and all disputes or claims . . . arising from, relating to, or in connection with" Plaintiff's employment, including "claims for nonpayment or incorrect payment of compensation and benefits, including, but not limited to, claims for salary, wages, overtime, premium pay, commissions, bonuses, severance, meal and rest periods, penalties, employee fringe benefits, stock options, and the like…" (*Id.*) And since Plaintiff's claims are for unpaid overtime under the FLSA, Defendant concludes that Plaintiff's allegations are completely encompassed by the Arbitration Agreement, satisfying the second prong. (*Id.* at 11-12.)  Finally, Defendant points out that the burden of overcoming the strong presumption in favor of arbitration is on Plaintiff, as the party opposing arbitration. (Doc. 20-1 at 6 (citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *see also Carter v. Countrywide Credit Indus., Inc.,* 362 F.3d 294, 297(5th Cir. 2004)).)

In sum, Defendant contends that because (1) the parties' arbitration agreement is binding and enforceable and because (2) Plaintiff's claims and all her factual allegations fall within its scope, this dispute should be compelled to arbitration. (Doc. 20-1 at 2.)

---

[3] The Arbitration Agreement that Plaintiff reviewed, includes the following provision:
> This Agreement is binding on Employee and Company regardless of whether Employee signs below and without the need for Company to sign it. . . . It is intended this Agreement will at all times apply to Company and will immediately apply to Employee on signing, or, if Employee refuses to sign this Agreement, this Agreement will apply to Employee within thirty (30) days after Employee has been provided with a copy of this Agreement and Employee continues with his or her employment with Company.

(Arbitration Agreement ¶ 11, Doc. 48-3; Patel Dec. ¶ 10, Doc. 20-2.)

### B.  Plaintiff's Opposition (Doc. 29)

In her opposition, Plaintiff does not dispute that the Arbitration Agreement is valid or that the Agreement covers her FLSA claims at issue. Instead, Plaintiff argues that Defendant has waived its right to arbitrate because it substantially invoked the judicial process. (Doc. 29 at 5.) Plaintiff asserts that Defendant did so by litigating and then attempting to settle the *O'Bryant* case in the Western District of Tennessee and by contractually agreeing to litigate claims related to the *O'Bryant* settlement in Tennessee. (*Id.* at 3-4.)

To support her waiver argument Plaintiff relies on a Sixth Circuit case, *O.J. Distributing, Inc., v. Hornell Brewing Co*., 340 F.3d 345 (6th Cir. 2003), which found that the defendant in that case had waived its right to arbitrate due to its engaging in negotiations with the plaintiff for over a year while denying the existence of the agreement, and therefore the arbitration provision. (Doc. 29 at 3.) From this, Plaintiff argues that ABC has ignored the arbitration agreement in the *O'Bryant* case and has invoked the judicial process in the Western District of Tennessee, thereby waiving its right to compel arbitration in this case. (*Id.* at 3-4.)

Plaintiff also contends that Defendant invoked the judicial process by filing a Motion to Stay this case until the Tennessee court ruled on a pending settlement agreement in the *O'Bryant* case. (*Id.* at 3-4.) Plaintiff argues that Defendant is "clearly seeking to have a decision on the merits of this claim determined by a court, namely the Western District of Tennessee, and not arbitration." (Doc. 29 at 3.) Therefore, Plaintiff concludes that Defendant has waived its right to compel arbitration. (*Id.* at 5.)

### C.  Defendant's Reply (Doc. 48)

In response, Defendant argues that this Court should compel arbitration because Plaintiff does not dispute that a valid Arbitration Agreement exists or that her FLSA claims fall squarely

within the scope of that Agreement. It also claims that Plaintiff's waiver arguments are baseless. (Doc. 48-2 at 1.)

Regarding Plaintiff's primary argument in opposition to the Motion—that ABC's settlement in a *different* litigation matter involving *different* named plaintiffs waives ABC's right to compel *this* Plaintiff to arbitration in *this* case—Defendant points out that this argument has been uniformly rejected by courts nationwide. (Doc. 48-2 at 6-7 (citing *Jeffries v. Wells Fargo & Co.*, No. 2:16-CV-01987-LSC, 2017 WL 3149513, at *5 (N.D. Ala. July 25, 2017); *Hughes v. S.A.W. Entm't, Ltd.*, No. 16-CV-03371-LB, 2019 WL 2060769, at *17 (N.D. Cal. May 9, 2019)*; Lawrence v. Household Bank (SB), N.A.*, 343 F. Supp. 2d 1101, 1113 (M.D. Ala. 2004).)

Specifically, Defendant highlights *Jeffries*, in which the court found that defendants' negotiation of a settlement in a different case did not constitute a waiver of their right to pursue arbitration in the case before the court. *Jeffries*, 2017 WL 3149513, at *5. From this, Defendant reasons that its settlement attempts in *O'Bryant*, a case brought by different plaintiffs in a different court, does not and cannot constitute a waiver of its right to compel Plaintiff to arbitration in this case. (Doc. 48-2 at 7.)

Second, Defendant contends that its Motion to Stay, Motion to Transfer Venue, and Motion to Dismiss do not constitute waiver because none of those motions are inconsistent with its position that Plaintiff's claim should be adjudicated in arbitration, not a court. Defendant reiterates that each of these Motions was filed in the alternative to the instant motion and that it expressly reserved its right to compel arbitration in each motion. (Doc. 48-2 at 8; Doc. 8-1 at 1, n.2; Doc. 18-1 at 2, n.2; Doc. 19-1 at 1, n.2.)

Specifically, Defendant argues that its Motion to Stay does not demonstrate that it is seeking to have the *O'Bryant* court decide the merits of this case. (Doc. 48-2 at 8.) ABC

maintains that its Motion to Stay only sought to postpone a decision on the merits in this case pending a ruling in *O'Bryant* to promote efficiency and conservation of Court and party resources. (*Id.* (citing Doc. 8-1 at 7-8.))  It points out that Plaintiff has offered no authority that supports her position that there is waiver here. (*Id.* at 8.) ABC then cites to numerous cases wherein courts, including the Fifth Circuit, have held that arbitration has not been waived when faced with facts similar to this case (and even in cases where the defendant has waited longer to compel arbitration or more substantially invoked the judicial process than ABC has here). (*Id.* at 9 (citing *Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc.*, 927 F. Supp. 2d 348, 358 (E.D. La. 2013); *Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897–98 (5th Cir. 2005); *Fozard v. C.R. England, Inc.*, 243 F. Supp. 3d 789, 791, 797 (N.D. Tex. 2017); *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661–62 (5th Cir. 1995); *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008)).)

Third, Defendant asserts that Plaintiff has not met her burden of demonstrating she suffered prejudice sufficient to warrant a finding of waiver because she "does not even attempt to argue that she suffered any prejudice." (Doc. 48-2 at 10 (citing *Brock Servs., LLC v. Rogillio*, No. CV 18-867-JWD-EWD, 2020 WL 2529396, at*22 (M.D. La. May 18, 2020) (deGravelles, J.).)  From this Defendant concludes that this Court should compel Plaintiff to arbitration for her FLSA claims. (*Id.*)

III.   **Discussion**

A.  **Federal Arbitration Act**

1. **Applicable Law**

The Fifth Circuit has held that, in the context of pre-certification motions to compel arbitration in FLSA cases, "a court should address the arbitrability of the plaintiff's claim at the

outset." *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 378 (5th Cir. 2016). "[A] district court must consider an agreement to arbitrate as a 'threshold question.'" *Id.* at 377 (citing *Auto Parts*, 782 F.3d at 196.) The Fifth Circuit has explained that to hold otherwise would present a justiciability issue: a court could conditionally certify a collective action solely on the basis of a claim that the plaintiff was bound to arbitrate and was therefore barred from bringing it in court in the first place. *Cf. James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001) ("If the litigant fails to establish standing, he or she may not seek relief on behalf of himself or herself or any other members of the class." (citing *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974))).

Furthermore, deciding whether a plaintiff should be compelled to arbitrate her FLSA claim prior to conditional certification more closely aligns with the "national policy favoring arbitration" embodied by the FAA. *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 346, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)); *see also Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) ("[T]here is a strong presumption in favor of arbitration....").

The Supreme Court has instructed that "the Federal Arbitration Act requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412, 203 L. Ed. 2d 636 (2019). Section Two of the Federal Arbitration Act provides, "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy . . .  shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Congress, in enacting the Federal Arbitration Act, found that "arbitration had more to offer than courts recognized—not least the promise of quicker, more informal, and often cheaper resolutions for everyone involved. So, Congress directed courts to abandon their hostility and instead treat arbitration agreements as valid, irrevocable, and enforceable." *Brock Servs., LLC v. Rogillio*, No. CV 18-867-JWD-EWD, 2020 WL 2529396, at*20. (internal citations omitted). Because the FAA is a "congressional declaration of a liberal policy favoring arbitration," all doubts as to the arbitrability of a dispute must be resolved in favor of arbitration. *Hornbeck*, 981 F.2d at 754; *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir.2000).

As set forth by the Fifth Circuit in *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996), a motion to compel under the Federal Arbitration Act requires the Court to make a two-step inquiry.

> The first step is to determine whether the parties agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. When deciding whether the parties agreed to arbitrate the dispute in question, courts generally ... should apply ordinary state-law principles that govern the formation of contracts. In applying state law, however, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration. The second step is to determine whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.

*Webb*, 89 F.3d at 258 (internal quotation marks and citations omitted).

### 2. Analysis

In accordance with Fifth Circuit precedent, this Court must consider Defendant's Motion to Compel Arbitration as a "threshold question" before considering conditional class certification. In considering whether to grant Defendant's Motion, the Court must first determine whether the parties agreed to arbitrate the dispute in question.  "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2)

whether the dispute in question falls within the scope of that arbitration agreement." *Webb*, 89

F.3d at 257–58; *Brock Servs., LLC*, 2020 WL 25229396, at *23. Both conditions are met here.

### a. Valid Agreement

The parties do not dispute that the Arbitration Agreement is a valid arbitration agreement,

in writing, between them. Plaintiff has not denied signing the Agreement nor has she raised any

challenges to the validly of the Agreement. Therefore, the Court turns to whether the dispute in

question falls within the scope of the Arbitration Agreement.

### b. Dispute within Scope of Agreement

As set forth previously, the Arbitration Agreement defines the scope as:

> Company and Employee mutually agree to arbitrate before a neutral arbitrator (the
> "Arbitrator") any and all disputes or claims by and between Employee, on the one
> hand, and Company, its parent, subsidiary, and affiliated corporations and entities,
> and each of their present and former officers, directors, agents, and employees (the
> "Company Parties"), on the other hand, *including but not limited to any and all
> claims arising from, relating to, or in connection with Employee's recruitment,
> hiring, and employment, the termination of that employment, and any claims
> arising post-employment, including claims by or against the Company Parties,
> whether such disputes or claims arise in tort, in contract, or under a statute,
> regulation, or ordinance now in existence or that may in the future be enacted or
> recognized, including but not limited to the following claims:*
>
> [. . .]
>
> *d. Claims for nonpayment or incorrect payment of compensation and benefits,
> including, but not limited to, claims for salary, wages, overtime, premium pay,
> commissions, bonuses, severance, meal and rest periods, penalties, employee fringe
> benefits, stock options, and the like, whether such claims derive from alleged
> express or implied contract or obligation, equity, the Fair Labor Standards Act, the
> Employee Retirement Income Securities Act (ERISA), or any other federal, state,
> or municipal laws concerning wages, compensation, or employee benefits.*

(Def. Ex. 1, Doc. 48-3 at 4 (emphasis added).)

The Fifth Circuit distinguishes between narrow and broad arbitration clauses. "Narrow

arbitration clauses are ones where the language of the clause requires the arbitration of disputes

'arising out of' the agreement, whereas broad arbitration clauses are those where the language of

the clause requires arbitration of 'any dispute that arises out of or relates to the agreement,' or disputes that are 'in connection with' the agreement." *Baudoin v. Mid-Louisiana Anesthesia Consultants, Inc.*, 306 F. App'x 188, 192 (5th Cir. 2009). "If the clause is broad, the action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause." *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993).

The scope of the Arbitration Agreement is broad as it covers, "any and all disputes or claims . . . arising from, relating to, or in connection with" Plaintiff's employment. (Def. Ex. 1, Doc. 48-3 at 4.) Even if scope of the Agreement were narrow, it specifically includes claims relating to "nonpayment or incorrect payment of compensation and benefits, including, but not limited to, claims for salary, wages, overtime, premium pay, commissions, bonuses, severance, meal and rest periods, penalties, employee fringe benefits, stock options, and the like, whether such claims derive from alleged express or implied contract or obligation, equity, the Fair Labor Standards Act, . . .." (*Id.*) Therefore, the Court holds that the dispute in question between the parties falls within the scope of the Arbitration Agreement.

### B. Waiver

#### 1. Applicable Law

Since the Arbitration Agreement extends to the claims in question, the Court must next consider whether the right to arbitrate has been waived. *See Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir.2002); *Miller Brewing Co. v. Fort Worth Distrib. Co.,* 781 F.2d 494, 497 (5th Cir.1986). Under Fifth Circuit precedent, "the right to arbitrate—like all contract rights—is subject to waiver." *Forby v. One Technologies, L.P.*, 909 F.3d 780, 783 (citing *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009)). Whether a party's conduct "constitutes a waiver of the right of arbitration depends on the facts of each case." *In re Mirant*

*Corp.*, 613 F.3d 584, 589 (5th Cir. 2010) (quoting *Tenneco Resins*, 770 F.2d at 420). Therefore, in the Fifth Circuit, "a bright-line rule is inappropriate for deciding whether a party has waived its right to arbitration." *In re Mirant Corp.*, 613 F.3d at 589. "There is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden." *Id.* at 588. "[A] party waives its right to arbitrate if it (1) substantially invokes the judicial process and (2) thereby causes detriment or prejudice to the other party." *Forby*, 909 F.3d at 783 (internal citations and quotations omitted).

Under the first prong, in order to substantially invoke the judicial process, a party "must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Id.* at 784. As such, "[a] party waives arbitration by seeking a decision on the merits before attempting to arbitrate." *Id.*

In general, "[a]ttempts at settlement ... are not inconsistent with an inclination to arbitrate and do not preclude the exercise of a right to arbitration." *Walker v. J.C. Bradford & Co.,* 938 F.2d 575, 578 (5th Cir. 1991). "Offers to settle, like arbitration, are to be favored, as they encourage the amicable and quick settlement of suits outside the judicial system." *Id.* To hold that a defendant waives its right to compel arbitration in one case by entering a judicial settlement in another case would create a disincentive for any defendant facing multiple lawsuits to settle. Such an outcome is to be avoided. *Id.*

Therefore, the Fifth Circuit has explained "that the invocation of the judicial process that effects a waiver requires the waiving party to demonstrate a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of America*, 97 F. App'x 462, 465 (citing *Texaco Expl. & Prod. Co. v. AmClyde*

*Engineered Prod. Co.*, 243 F.3d 906, 912 (5th Cir. 2001); *Subway Equip. Leasing Corp. v. Forte*,

169 F.3d 324, 329 (5th Cir.1999)).

For example, in *Forby v. One Techs., L.P.*, 909 F.3d at 784, the Fifth Circuit found that

the defendant, One Tech, substantially invoked the judicial process by filing a motion to dismiss.

One Tech successfully transferred the case from Illinois to Texas by citing the right to

arbitration. *Id.*

> One Tech was fully aware of its right to compel arbitration when it filed its 12(b)(6)
> motion to dismiss. After all, it presented the right to arbitration as the reason it
> sought to transfer the case from Illinois to Texas. However, once in Texas, One
> Tech did not move to compel arbitration even in the alternative to its motion to
> dismiss. Rather, it pursued and partially obtained a dismissal with prejudice of
> Forby's claims. One Tech's action of moving to dismiss Forby's claims with no
> mention of compelling arbitration demonstrated a desire to resolve the dispute in
> litigation rather than arbitration.

*Id.* Therefore, because One Tech knew it had a right to arbitrate and instead availed itself of the

Court to dismiss the claims with prejudice before compelling arbitration, the Fifth Circuit found

that the first prong had been met. *Id.*

In contrast, the Fifth Circuit declined to find waiver of the right to arbitrate in *Williams v.*

*Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661–62 (5th Cir. 1995). As the Fifth Circuit explained:

> Cigna removed the action to federal court, filed a motion to dismiss, filed a motion to
> stay proceedings, answered Williams' complaint, asserted a counterclaim, and
> exchanged Rule 26 discovery. Cigna filed its motion for a stay pending arbitration as
> soon as it discovered that the dispute was subject to arbitration. It answered Williams'
> complaint only after it filed its motion for stay pending arbitration and after Williams
> claimed that Cigna was in default for failing to answer. The answer included a
> counterclaim that was compulsory under Fed.R.Civ.P. 13(a). After Cigna filed its
> motion for stay pending arbitration, it also filed a motion to stay discovery pending
> the court's ruling on the arbitration motion. The court denied Cigna's motion to stay
> discovery and when Cigna sought letter agreements confirming that its response to
> Williams' discovery request would not constitute a waiver of its right to seek
> arbitration, Williams refused. In sum, Cigna did not "substantially invoke[ ] the
> judicial process" and waive its right to seek arbitration.

*Id.*; *see Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897–98 (5th Cir.2005)

(finding no waiver where a defendant concurrently filed a motion to compel arbitration with a

motion for summary judgment). In both *Forby* and *Williams*, the Fifth Circuit made it clear that

it strongly disfavors attempts to advance one's legal position through the judicial process only to

seek to finish the suit in arbitration, particularly when the dispute was arbitrable from the

beginning.

Under the second prong, a party must also demonstrate prejudice. *Id.* "Prejudice refers to

the inherent unfairness in terms of delay, expense, or damage to a party's legal position that

occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that

same issue." *Forby*, 909 F.3d at 784-785 (citing *Republic Ins. Co. v. PAICO Receivables, L.L.C.*,

383 F.3d 341, 346 (5th Cir. 2004)). Delay alone does not constitute prejudice. *Id.* at 785.

Prejudice occurs if,

a party will have to re-litigate in the arbitration forum an issue already decided by
the district court in its favor. . . . A party does not get to learn that the district court
is not receptive to its arguments and then be allowed a second bite at the apple
through arbitration.

*Id.* (internal quotation marks and citations omitted). The Fifth Circuit dictates that courts must

predicate their analysis of prejudice on three main factors: "(1) whether discovery occurred

relating to arbitrable claims; (2) the time and expense incurred in defending against a motion for

summary judgment; and (3) a party's failure to timely assert its right to arbitrate." *Petroleum*

*Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009). "[W]hen only a

minimal amount of discovery has been conducted, which may also be useful for the purpose of

arbitration, the court should not ordinarily infer waiver based upon prejudice to the party

opposing the motion to stay litigation." *Tenneco Resins, Inc. v. Davy Intern., AG*, 770 F.2d at

421.

### 2. Analysis

#### a. Substantially Invoked Judicial Process

Plaintiff contends that Defendant has waived its right to compel arbitration by substantially invoking the judicial process. Plaintiff argues that Defendant did so by reaching a settlement in the *O'Bryant* case and by filing a Motion to Stay Plaintiff's case in this Court. Plaintiff's arguments fail for two reasons. First, Defendant's actions in the *O'Bryant* case did not and cannot waive ABC's right to compel arbitration in this action. Second, ABC did not seek a decision on the merits in this case by filing a Motion to Stay. As such, ABC did not substantially invoke the judicial process and therefore there is no waiver of its right to arbitrate.

#### i. ABC's Pending Settlement

Plaintiff's primary argument in opposition to the instant motion is that ABC's pending settlement in *O'Bryant*, a *different* case involving *different* named plaintiffs waives ABC's right to compel *this* Plaintiff to arbitration in *this* case because Plaintiff is a putative member of the collective in *O'Bryant*.

To support her waiver argument Plaintiff points to a Sixth Circuit case, *O.J. Distributing, Inc., v. Hornell Brewing Co.*, 340 F.3d 345 (6th Cir. 2003), which found that the defendant in that case had waived its right to arbitrate due to its engaging in negotiations with the plaintiff for over a year while denying the existence of the agreement, and therefore the arbitration provision. (Doc. 29 at 3.) From this, Plaintiff argues that ABC has ignored the arbitration agreement in the *O'Bryant* case and has invoked the judicial process in the Western District of Tennessee, thereby waiving its right to compel arbitration in this case. (*Id.* at 3-4.)

The Court rejects Plaintiff's argument for several reasons.  First, *O.J. Distributing* does not support Plaintiff's argument because it says nothing about whether attempts at settlement in

one case can waive a defendant's right to seek arbitration in another. Second, *O.J. Distributing* is distinguishable because Defendant in this case has not denied the existence of the Arbitration Agreement. Rather, Defendant has consistently acknowledged its existence starting at the time of its first response. (Doc. 8-1, at 1 n.2; Doc. 18-1, at 1 n.2; Doc 19-1, at 1 n.2.)

Additionally, courts have rejected Plaintiff's exact argument, concluding that a party's settlement in one case does not amount to a waiver of its right to arbitrate in another case, even if the settlement is on a class basis (and overlaps with the case that the defendant seeks to arbitrate). *See Bischoff v. DirecTV, Inc.,* 180 F.Supp.2d 1097, 1113 (C.D. Cal. 2002) ("[T]o hold that defendant can no longer assert its right to compel arbitration simply because it did not assert that right in another case is absurd."); *see also Carbajal v. Household Bank,* 2003 WL 22159473, at *12 n.8 (N.D. Ill. 2003), *aff'd sub nom. Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 905 (7th Cir. 2004) (affirming that defendants' efforts to include plaintiff in the "master" class settlement did not waive the defendants' right to arbitrate); *Lawrence v. Household Bank*, 343 F. Supp. 2d 1101, 1113 (M.D. Ala. 2004) (defendant did not waive its right to arbitrate against plaintiffs by entering into a class settlement in a separate case, even where the class settlement overlapped plaintiffs' claims); *Hughes v. S.A.W.*, 2019 WL 2060769, at *17; *Jeffries v. Wells Fargo*, 2017 WL 3149513, at *5.

For example, in *Jeffries*, the plaintiffs contended that Wells Fargo, by reaching a settlement with the plaintiffs in the *Jabbari* action, waived any right to arbitrate their dispute with the *Jeffries* plaintiffs in a separate case. *Jeffries*, 2017 WL 3149513, at *5. The court rejected this argument and found that Wells Fargo's negotiation of a settlement in the *Jabbari* litigation did not constitute a waiver of their right to pursue arbitration against the *Jeffries* plaintiffs. *Id.* at *5. The court explained:

In general, "[a]ttempts at settlement ... are not inconsistent with an inclination to arbitrate and do not preclude the exercise of a right to arbitration." *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir. 1991) (citing *Sw. Indus. Import & Export, Inc. v. Wilmod Co.*, 524 F.2d 468, 470 (5th Cir. 1975) (per curiam)). "Offers to settle, like arbitration, are to be favored, as they encourage the amicable and quick settlement of suits outside the judicial system." *Id.* Therefore, the fact that Wells Fargo has agreed to a settlement of the claims against it in the *Jabbari* litigation does not constitute a waiver of its arbitration right. […] First, Plaintiffs have represented to this Court that they intend to opt out of the *Jabbari* settlement class when given the opportunity and continue to pursue their claims against Wells Fargo. (Doc. 39 at 2.) Additionally, according to Plaintiffs, the *Jabbari* court declined to enjoin related actions as a result of the proposed settlement. (*Id.*) If Plaintiffs prefer to resolve their claims before a district court, they may participate in the class settlement. Alternatively, they may opt out of the settlement class and present their arguments to an arbitrator in accordance with their agreement with Wells Fargo.

*Id.* Likewise, Plaintiff's argument—that ABC waived its right to arbitrate in this case by its conduct in the *O'Bryant* case—is not persuasive. Further, like the plaintiffs in *Jeffries*, Plaintiff has represented to this Court that she intended to opt out of the *O'Bryant* settlement class when given the opportunity and continue to pursue her claims against ABC. (Doc. 39 at 2.)

## ii.    ABC's Motion to Stay

Next, as this Court understands Plaintiff's brief, Plaintiff argues that by filing a Motion to Stay in this case, Defendant has sought a decision on the merits in *O'Bryant* that precludes it from compelling arbitration in this case. (Doc. 29 at 3-4.) Specifically, Plaintiff alleges:

ABC Phones again invoked the judicial process by asking this Court to stay proceedings until the determination of a motion to approve a settlement agreement, which ABC Phones claims "could potentially resolve many, if not all, claims in this matter." (Rec. Doc. 8-1 at 2). ABC Phones is clearly seeking to have a decision on the merits of this claim determined by a court, namely the Western District of Tennessee, and not arbitration.

(*Id.* at 3.) In support of this argument, Plaintiff points to *Miller Brewing Co. v. Ft. Worth Distributing Co.,* 781 F.2d 494, 498 (5th Cir. 1986) which says, "Any attempt to go to the merits and to retain still the right to arbitration is clearly impermissible."

19

Again, Plaintiff's argument is rejected for two reasons. First, Defendant has not sought a decision on the merits in this case before attempting to arbitrate. *Brock Servs.,* 2020 WL 2529396, at *20.  For example, waiver has been found where a party moved to compel arbitration only after the district court had partially denied its third motion to dismiss, despite that party being fully aware of its right to compel arbitration from the outset. *In re Mirant Corp.*, 613 F.3d 584, 589–90 (5th Cir. 2010). Waiver has also been found when a party announced its intent to arbitrate eight months after filing suit, then allowing its demand for arbitration to lay dormant for 3 and a half years, while pursuing other legal remedies. *Miller Brewing Co. v. Fort Worth Distributing Co., Inc.*, 781 F.2d 494, 497 (5th Cir. 1986). In these circumstances, the Fifth Circuit has found waiver to prevent the parties from gaming the system by seeking a win at trial, and in the case of a loss, anticipating a second bite at the apple through arbitration.

These cases are easily distinguished from the scenario in this case. Defendant has demonstrated its preference for arbitration since the start of the case and has submitted dispositive motions only as an alternative to its motion to compel arbitration. *See, e.g., Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661–62 (5th Cir. 1995) (finding no waiver where defendant removed to federal court, moved to dismiss and to stay proceedings for arbitration, answered the complaint, asserted a counterclaim, and exchanged Rule 26 discovery subject to motion to stay pending arbitration); *Keytrade USA, Inc. v. Ain Temouchent M/V,* 404 F.3d 891, 897–98 (5th Cir. 2005) (finding no waiver where a defendant concurrently filed a motion to compel arbitration with a motion for summary judgment); *Steel Warehouse Co. v. Abalone Shipping Ltd. of Nicosai,* 141 F.3d 234, 236–38 (5th Cir. 1998) (finding no waiver where defendant filed motion to dismiss contemporaneously with a motion to compel arbitration).

ABC did not seek a decision on the merits in this case. It has consistently attempted to enforce its Arbitration Agreement from the start. In all of its motions, Defendant has clearly asserted that those motions were being made as an alternative to its motion to compel arbitration. (Doc. 8-1, at 1 n.2; Doc. 18-1, at 1 n.2; Doc 19-1, at 1 n.2.) Further, by filing a Motion to Stay, Defendant did not seek a decision on the merits. It was simply trying to preserve its resources by not having to litigate two very similar suits at the same time. There was no attempt to game the system by seeking a decision on the merits while keeping the arbitration option as a backup plan in case the effort failed.

Second, as discussed above, Defendant's actions in *O'Bryant*—namely its attempts at settlement—do not constitute a waiver of its right to arbitration in this case. Plaintiff is not a party to *O'Bryant*. Further, she has consistently expressed her intent to opt out of any settlement negotiated in the *O'Bryant* case. She cannot now argue that she is included as member of the *O'Bryant* class to support a finding of waiver in this case, while at the same time maintain that she does not want to be a part of the *O'Bryant* case. If Plaintiff prefers to resolve her claims before a district court, she may participate in the class settlement. Alternatively, she may opt out of the settlement class and present her arguments to an arbitrator in accordance with her Arbitration Agreement with ABC. *See Jeffries*, 2017 WL 3149513, at *5.

In light of the above, the Court finds that Plaintiff failed to show that Defendant evinced a desire to proceed in litigation rather than arbitration. Accordingly, ABC did not substantially invoke the judicial process and waive its right to arbitration.

### b.  Prejudice

Even if the Court had determined that Defendant substantially invoked the judicial process in a way that evinces a desire to proceed in litigation rather than arbitration, Plaintiff has

failed to show she was prejudiced. See *Brendel v. Meyrowitz*, 3:15–cv–1928–D, 2016 WL 302282, at *10 (N.D. Tex. Jan. 25, 2016) (finding in the alternative that even if a defendant had substantially invoked the judicial process, the plaintiff made no attempt to show how he suffered unfair prejudice).

The Fifth Circuit instructs courts to consider three factors in determining if prejudice has occurred, "(1) whether discovery occurred relating to arbitrable claims; (2) the time and expense incurred in defending against a motion for summary judgment; and (3) a party's failure to timely assert its right to arbitrate." *Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009). Again, the party opposing arbitration carries the burden of demonstrating prejudice.

Plaintiff failed to give a single example of how Defendant's actions caused her detriment or prejudice. Additionally, as to factors one and two of the Fifth Circuit's test, there is no indication that any discovery has occurred and no motion for summary judgment has been filed. As to the third factor—delay—Plaintiff filed her Complaint on May 11, 2020. Defendant filed a Motion to Stay on May 21, 2020, and this Motion to Compel Arbitration on June 15, 2020. This short delay in seeking to compel arbitration does not establish waiver. "Delay by itself 'falls far short' of establishing a waiver." *Tristar Fin. Ins. Agency*, 97 Fed. Appx. at 465 (quoting *Texaco Exploration*, 243 F.3d at 912) ("[Defendant's] eight-month delay in seeking arbitration does not compel a finding of waiver.").

In sum, because there is a valid and enforceable Arbitration Agreement that covers Plaintiff's FLSA claims and because Plaintiff cannot meet her heavy burden to overcome the strong presumption against a finding of waiver of arbitration rights, this Court is required to compel arbitration.

**IV.    Conclusion**

Accordingly,

**IT IS ORDERED** that Defendant's *Motion to Compel Arbitration* (Doc. 20) is **GRANTED**;

**IT IS FURTHER ORDERED** that all otherwise pending motions in this case are denied without prejudice subject to refiling, if necessary, following arbitration;

**IT IS FURTHER ORDERED** that this case is stayed and administratively closed, pending the outcome of arbitration.

Signed in Baton Rouge, Louisiana, on October 23, 2020.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**